**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Kelly Johnson,<br>Plaintiff,<br>v.<br>Chandler Unified School District, et al.,<br>Defendants. | No. CV-24-00530-PHX-MTL<br>**ORDER** |

Pending before the Court is Defendants Chandler Unified School District, Michael Franklin, James Culver, Luke Hickey, Richard Garretson, Brett Boyd, and Frank Narducci's Motion for Summary Judgement. (Doc. 109.) Plaintiff Kelly Johnson filed a response to the motion (Doc. 112), and Defendants filed a reply (Doc. 113).

## I. BACKGROUND

The Court's account of the facts in this case is taken from the exhibits attached to Defendants' Motion for Summary Judgment and Plaintiff's response. The Court also considers the well-pleaded allegations in Plaintiff's Second Amended Complaint (Doc. 67).[1]

[1] The Court may consider the facts in Plaintiff's Second Amended Complaint that are verified in Plaintiff's affidavit. (*See* Doc. 112-1 at 57); *see also Keenan v. Hall*, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996), *amended by*, 135 F.3d 1318 (9th Cir. 1998) ("A verified complaint may be treated as an affidavit to oppose summary judgment to the extent it is based on personal knowledge and sets forth specific facts admissible in evidence.") (citation modified).

This case concerns alleged harassment against Plaintiff Kelly Johnson, a former student and football player at Defendant Chandler Unified School District (the "District"). In relevant part, Plaintiff alleges that Defendants Chandler Unified School District, Michael Franklin, James Culver, Luke Hickey, Richard Garretson, Brett Boyd, and Frank Narducci (collectively, the "District Defendants")[2] did not adequately respond to the harassment.

Plaintiff was a defensive lineman for the Chandler High School Football team during the 2021 season. (Doc. 67 ¶ 35.) Beginning in August 2021, other defensive linemen—minor Defendants JCD, IG, RM, RJN, and TP—began calling Plaintiff names and touching him inappropriately. (Docs. 67 ¶ 35; 112-1 at 56.) The harassment occurred around the school, including in the team's locker room and school bus, "within clear eye and ear shot of the coaches." (Doc. 112-1 at 57.)

On September 21, 2021, late at night, Plaintiff's mother, Latonia Johnson, emailed the District Defendants. (Doc. 109 at 14.) The email stated that Plaintiff "told [his therapist] that there are players on the [f]reshman defensive line calling him gay as they grabbed his rear throughout every practice. [Plaintiff] let [her] know that this has been going on for over a month with too many times to count." (*Id.*) Franklin and Culver reviewed the email on the morning of September 22, 2021. (*Id.* at 12, 17.) That morning, Franklin spoke to Plaintiff and his mother. (*Id.* at 12.) He explained the District's process for filing a formal complaint under Title IX, and he told Plaintiff that he could discuss issues with his guidance counselor, Crystal Lipinski. (*Id.*) Culver also contacted Officer Stephen Dieu of the Chandler Police Department. (*Id.* at 17.) Officer Dieu explained that he was aware of Kelly's report and instructed the school should wait to conduct its investigation until after a forensic specialist with the police department interviewed Plaintiff. (*Id.*) On September 28, 2021, Officer Dieu notified Culver that a forensic interview had taken place, no

[2] At all relevant times, Michael Franklin was the principal of Chandler High School, James Culver was an assistant principal and athletic director of Chandler High School, Luke Hickey was an assistant principal of Chandler High School, Richard Garretson was the head football coach at Chandler High School, Brett Boyd was a football coach at Chandler High School, and Frank Narducci was a superintendent of Chandler Unified School District (Doc. 67 ¶¶ 17-22.)

criminal charges would be pursued, and the school was clear to proceed with its own investigation. (*Id.*)

On October 1, 2021, Plaintiff's mother sent an email to Franklin, stating that Plaintiff's "first experience back was great, he felt supported[,] and [they] hoped [they] would not have to file a formal complaint against [JCD,] but he still continues to walk by and whisper [insults] in [Plaintiff]'s ear." (*Id.* at 15.) Attached to the email was a formal Title IX complaint against JCD. (*Id.*)

At the request of the school administration, on October 4, 2021, Coach Boyd spoke to three players, including JCD, to warn them against engaging in harassment toward any teammate or student. (*Id.* at 21.)

On October 6, 2021, Franklin received notice of an allegation that JCD threatened Plaintiff at practice on October 5, 2021. (*Id.* at 12.) Franklin immediately reported the allegation to the Chandler Police Department. (*Id.*)

When students returned to school on October 12, 2021, after fall break, the school transferred JCD out of the second period class that he shared with Plaintiff. (*Id.* at 17.) That same day, Lipinski met with Plaintiff and his mother to discuss a plan for Plaintiff's academic success and safety. (*Id.* at 30.) Plaintiff was enrolled in football during his fifth period, and at Plaintiff's request, Lipinski transferred Plaintiff into a regular physical education class. (*Id.*) On October 30, 2021, Plaintiff's mother sent an email to Superintendent Narducci, complaining that "the only action[] that ha[s] been taken by the school is that [JCD] is not allowed to play on the team." (Doc. 112-1 to 110.) Plaintiff's mother takes issue with the fact that "the student that bullied [Plaintiff] and threatened to rape him continues to walk the halls with no repercussions," but the email does not detail new instances of harassment. (*Id.*) Narducci did not reply. (*Id.*)

Through their parents, Plaintiff and JCD voluntarily requested participation in an informal process to resolve Plaintiff's Title IX complaint. (Doc. 109 at 32.) During October and November 2021, Renee Clancy, the school's dean of students, worked with them to facilitate an agreement. (*Id.*) She was unsuccessful. (*Id.*) The school pressed forward with

a formal Title IX investigation, and based on its findings, the school suspended JCD for ten days. (*Id.* at 34.) The school also ensured that Plaintiff and JCD never shared a class during the rest of their time in high school. (*Id.* at 25.) On December 6, 2021, JCD continued to harass Plaintiff in the school's halls. (Doc. 67 ¶ 57.)

A police report documents that, on March 4, 2022, Plaintiff was bullied by TP, who pushed and pulled Plaintiff while he was in a walking boot for a foot injury. (Doc. 112-1 at 126-27.)

This suit was initiated on March 12, 2024, by Plaintiff and his parents against the District Defendants, their spouses, the students, and their parents. (Doc. 1.) Plaintiff originally alleged ten claims: (1) violation of due process under 42 U.S.C. § 1983 and the Fourteenth Amendment, against all individual Defendants and their spouses (Count I); (2) municipal liability under 42 U.S.C. § 1983 and the Fourteenth Amendment, against the District (Count II); (3) creating a sexually hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*, against the District (Count III); (4) conspiracy under 42 U.S.C. § 1983 and the Fourteenth Amendment, against all individual Defendants and their spouses (Count IV); (5) common law failure to protect, against all individual Defendants and their spouses (Count V); (6) respondeat superior liability, against the District (Count VI); (7) common law assault and battery, against the minor Defendants and their parents (Count VII); (8) common law intentional infliction of emotional distress, against the minor Defendants and their parents (Count VIII); (9) common law loss of consortium, against all Defendants (Count IX); and (10) failure to report and negligence per se under Arizona Revised Statutes § 13-3620, against the individual District Defendants and their spouses (Count X). (*Id.*) The Court granted leave for Plaintiffs to amend their original Complaint to make typographical corrections. (Doc. 32.) Plaintiffs thereafter filed the First Amended Complaint. (Doc. 33.)

The District Defendants filed a Motion to Dismiss Counts I, II, IV, and IX. (Doc. 34.) The Court granted the Motion, dismissing Count IX with prejudice, and dismissing Counts I, II, and IV with leave to amend. (Doc. 58.) Plaintiff filed a Second

Amended Complaint, omitting his parents as plaintiffs and providing more detail as to the alleged harassment and response by the District Defendants. (Doc. 66.) The District Defendants again filed a Motion to Dismiss Counts I, II, and IV, (Doc. 70), and the Court granted the Motion and dismissed the counts with prejudice, (Doc. 75).

Plaintiff has reached a settlement agreement with Defendants Yolanda Diaz, Dionicio Corte, and Heather Ramirez, parents of JCD and IG respectively. (Doc. 115.)

Now pending before the Court is the District Defendants' Motion for Summary Judgment. (Doc. 109.) The Court now rules.

## II. LEGAL STANDARD

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

At the summary judgment stage, the "moving party . . . has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). But although a movant must demonstrate that there is no genuine issue of material fact, a movant that would not bear the burden of proof at trial does not have to present evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim.") (emphasis in original). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (citation omitted); *see also Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994) (holding that the court determines whether there is a genuine issue for trial but does not weigh the evidence or determine the truth of matters

asserted).

## III. DISCUSSION

The District Defendants seek summary judgment on all remaining claims asserted against them. (Doc. 109.)

### A. Title IX Claim (Count III)

The District Defendants move for summary judgment on Plaintiff's claim that they created a sexually hostile educational environment under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.* (Count III). (Doc. 109 at 3-6.) Title IX provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681(a). Title IX prohibits intentional discrimination. *See Alexander v. Sandoval*, 532 U.S. 275, 280 (2001) (holding that Title VI, upon which Title IX is based, prohibits only intentional discrimination). It supports a private damages action against a federal fund recipient for student-to-student harassment "in certain limited circumstances." *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 643 (1999). To sustain a Title IX claim, "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf [must have] actual knowledge of discrimination . . . and [must] fail[] adequately to respond." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). "[T]he response must amount to deliberate indifference to discrimination," meaning "that an official who is advised of a Title IX violation refuses to take action to bring the recipient into compliance." *Id.* Deliberate indifference exists only "where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 739 (9th Cir. 2000).

Defendants do not dispute that the District is a federal fund recipient under Title IX. (*See* Doc. 67 ¶ 101.) Plaintiff's Title IX claim alleges that the District Defendants "created a sexually hostile educational environment at the High School, and in those areas of

Defendant School District in which the then minor Plaintiff was physically and sexually assaulted by Defendant JCD . . . ." (*Id.* ¶ 102.) The District Defendants maintain that "[t]he District was not deliberately indifferent to known harassment." (Doc. 109 at 4.)

Because a recipient may be liable under Title IX only if an official in authority "has actual knowledge of discrimination," the Court focuses only on the District's response to concerns of which it possessed actual knowledge. *Gebser*, 524 U.S. at 290. To demonstrate the school's actual knowledge, which would in turn require a response, Plaintiff must demonstrate that the "appropriate official possessed enough knowledge of the harassment that it reasonably could have responded with remedial measures to address the kind of harassment upon which plaintiff's legal claim is based." *Lopez v. Regents of Univ. of California*, 5 F. Supp. 3d 1106, 1122 (N.D. Cal. 2013) (quoting *Folkes v. N.Y. College of Osteopathic Medicine*, 214 F. Supp. 2d 273, 285 (E.D.N.Y. 2002)). Plaintiff declares that the harassment began in August 2021 and that bullying generally took place "within clear eye and ear shot of the coaches." (Doc. 112 at 11-12; 112-1 at 56-57.) Plaintiff's attestation to the fact that the bullying generally took place within earshot of the coaches shows, at most, that the coaches had an opportunity to perceive the misconduct, but it does not establish that they had actual knowledge of the bullying. Constructive notice may not serve as the basis for Title IX liability. *See Gebser*, 524 U.S. at 288 ("Title IX contains important clues that Congress did not intend to allow recovery in damages where liability rests solely on principles of vicarious liability or constructive notice.") The Court will therefore only evaluate whether the District Defendants' responses were reasonable with respect to the harassment that they did have actual knowledge of, namely through the emails sent by Plaintiff's mother on September 21, 2021, and October 1, 2021, and the notice Franklin received on October 6, 2021.

With respect to the harassment that the District Defendants did have knowledge of, the Court concludes that the District acted reasonably in responding to the concerns. The Court finds *Ogden v. Northern Marianas College*, 440 F.3d 1085 (9th Cir. 2006), instructive. In *Ogden*, the Ninth Circuit upheld a district court's granting of summary

judgment based on a finding that the defendant college was not deliberately indifferent in its response to sexual harassment allegations. 440 F.3d at 1088-1090. The Ninth Circuit placed significance on the fact that the defendant college "began to act as soon as it became aware of Plaintiff's allegations," "assigned [counselors] to Plaintiff to provide psychological and practical support," "assisted her in filing a formal complaint," and "helped her drop [the] class" where the harassment was occurring. *Id.* at 1089. Here, the District Defendants took immediate action; they responded within one school day of receiving Plaintiff's mother's emails and immediately upon receiving notice of a purported threat by JCD against Plaintiff. (Doc. 109 at 12-19, 21.) The District Defendants assigned a counselor to Plaintiff and notified law enforcement of the harassment on two occasions. (Doc. 109 at 12, 17.) After receiving Plaintiff's mother's email, which stated that "[Plaintiff]'s first experience back was great . . . but [JCD] still continues to walk by and whisper [insults] in [Plaintiff]'s ear," the District directed Coach Boyd to warn three players, including JCD, against engaging in harassment. (*Id.* at 15, 21.) Coach Boyd warned the players. (*Id.* at 21.) The District assisted Plaintiff's mother in filing a formal complaint, which prompted an informal effort at resolving the compliant, and ultimately, an investigation. (*Id.* at 17, 32, 34.) The District transferred JCD out of Plaintiff's class, transferred Plaintiff out of football during fifth period, and imposed a lengthy suspension on JCD. (*Id.* at 17, 30.) The nature of the District's responses were analogous to the school's responses in *Ogden* and do not amount to "an official decision . . . not to remedy the violation." *Gebser*, 524 U.S. at 290.

Plaintiff takes issue with the District's failure to fully prevent contact between the minor Defendants and Plaintiff, and points to Plaintiff's attestation to the fact that the bullying continued despite the corrective measures taken by the District. (Doc. 112 at 12-13.) But continued harassment does not necessarily indicate deliberate indifference on the part of the District. *See Davis*, 526 U.S. at 648 (explaining that the Court's holding "that recipients may be liable for their deliberate indifference to known acts of peer sexual harassment . . . does not mean that recipients can avoid liability only by purging their

schools of actionable peer harassment or that administrators must engage in particular disciplinary action"); *see also Ogden*, 440 F.3d at 1089 ("An aggrieved party is not entitled to the precise remedy that he or she would prefer."). Plaintiff also contends that the District Defendants' violation of certain school and Arizona Department of Education policies creates a triable issue of fact. (Doc. 112 at 13-14.) But notwithstanding the purported violations, the Court finds that the record does not support a finding that the District Defendants chose not to take corrective measures. *See Ogden*, 440 F.3d at 1089 (concluding that, although the college delayed convening a hearing in contravention to the school's policy, "the record fails to demonstrate that the delay was more than negligent, lazy, or careless," primarily because the "record [did] not permit an inference that the delay was a deliberate attempt to sabotage Plaintiff's complaint or its orderly resolution").

A school's response is deemed "deliberately indifferent" "only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648. The Court finds that the undisputed evidence establishes that the District responded reasonably to the harassment of which it had actual knowledge of. The Court will therefore grant summary judgment in favor of Defendant District as to Plaintiff's Title IX claim (Count X). *See id.* at 649 ("In an appropriate case, there is no reason why courts, on a motion to dismiss, for summary judgment, or for a directed verdict, [can]not identify a response as not 'clearly unreasonable' as a matter of law.").

**B. Failure to Protect (Count V) and Vicarious Liability (Count VI)**

The District Defendants also seek summary judgment on Plaintiff's failure to protect claim (Count V) and vicarious liability against the District (Count VI). (Doc. 109 at 6-7.) In Count V, Plaintiff generically alleges that the individual District Defendants "failed to protect the then minor Plaintiff," and that "[a]s a direct and proximate result of the actions and failures of the individual Defendants . . . , the then minor Plaintiff has suffered injuries and damages." (Doc. 67 ¶¶ 118, 121.) In Count VI, Plaintiff alleges that the District is vicariously liable for the individual District Defendants' failure to protect Plaintiff. (*Id.*

¶¶ 124-26.)

A failure to protect claim is properly brought and assessed under a theory of negligence. *See Hale v. Window Rock Unified Sch. Dist.*, 252 Ariz. 420, 422 (App. 2021). The standard is lower than that for deliberate indifference. *See Ogden*, 440 F.3d at 1089 (requiring, for a finding of deliberate indifference, that a school be "more than negligent, lazy, or careless"). Actionable negligence arises only when a plaintiff demonstrates duty, breach of that duty, causation, and damages. *See Gipson v. Kasey*, 214 Ariz. 141, 143 (2007). By statute and at common law, "the school-student relationship imposes an affirmative duty on schools to protect students from unreasonable risks of harm." *Dinsmoor v. City of Phoenix*, 251 Ariz. 370, 373-74 (2021) (citing *Hill v. Safford Unified Sch. Dist.*, 191 Ariz. 110, 112 (App. 1997). To perform that duty, schools must "exercise reasonable care in light of foreseeable and unreasonable risks." *Hill*, 191 Ariz. at 112.

A school district may be "vicariously liable for the negligence of its employee[s] under the doctrine of respondeat superior, which provides that an employer is vicariously liable for 'the negligent work-related actions of its employees.'" *Howard v. Wash. Elementary Sch. Dist. No. 6*, no. 1 CA-CV 20-0390, 2022 WL 363766, at *3 (Ariz. Ct. App. Feb. 8, 2022) (quoting *Engler v. Guld Interstate Eng'g, Inc.*, 230 Ariz. 55, 57 (2012)).

The District Defendants argue that "[P]laintiff only generically alleges that the District and its staff were negligent without specifying either how they were negligent or how such negligence caused his injury." (Doc. 109 at 6.) The District Defendants are right that Plaintiff pleads a bare theory as to these claims, but at summary judgment, the moving party bears the burden of demonstrating the absence of a genuine dispute of material fact based on the record, not the complaint. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(a). The Court finds that there is evidence in the record, primarily consisting of emails and text messages from Plaintiff's mother to school officials, that would support a reasonable inference that each individual District Defendant received actual or constructive notice of the harassment. (Doc. 112-1 at 52-54, 56-57, 68-69, 91, 93, 110-12, 114, 116, 120.) There is also evidence that may support an inference that each of

the individual District Defendants breached their duty of care by, among other things, failing to comply with the school's harassment policy, (Doc. 112-1 at 60-63). Evidence that the bullying continued despite the purportedly negligent actions of the District Defendants, (Doc. 67 ¶ 33, 45-46), creates a genuine issue of material fact as to causation.

Where, as here, the record contains evidence supporting a reasonable inference in the nonmovant's favor, the party moving for summary judgment must demonstrate why that inference cannot be reasonably drawn.[3] *See Anderson*, 477 U.S. at 255 (1986). The District Defendants furnish no evidence or argumentation foreclosing the genuine issues of material fact on this record. Nor do they attempt to argue the absence of factual disputes with respect to Plaintiff's vicarious liability claim as to the District. The sole case the District Defendants cite in support of their request for summary judgment as to Counts V and VI, *McMurty v. Weatherford Hotel, Inc.*, 231 Ariz. 244, 252 (App. 2013), concerns premises and dram shop liability, so it is thus inapposite. The District Defendants have not borne their burden under Rule 56, Fed. R. Civ. P., so the Court will deny Defendants' request for summary judgment on Plaintiff's failure to protect claim (Count V) and vicarious liability claim (Count VI).

**C. Failure to Report Claim (Count X)**

Defendants move for summary judgment on Plaintiff's failure to report claim (Count X). (Doc. 109 at 7-8.) The Second Amended Complaint appears to assert two theories. The first is a private right of action under Arizona Revised Statutes § 13-3620. (Doc. 67 ¶¶ 141-48.) The second theory Plaintiff proceeds under is a theory of negligence per se. (*Id.*)

Section 13-3620, commonly referred to as Arizona's mandatory reporting statute, requires that "[a]ny person who reasonably believes that a minor is or has been the victim of physical injury, abuse, child abuse, a reportable offense or neglect that appears to have

[3] The Court acknowledges that the record evidence is weak. The Court may not, however, weigh the evidence on summary judgment. This is particularly so where black-letter law instructs that breach and causation are questions for the jury to decide. *See Fehribach v. Smith*, 200 Ariz. 69, 73 (App. 2001) (citing *Rudolph v. Arizona B.A.S.S. Fed'n*, 182 Ariz. 622, 626-27 (App. 1995) ("Breach and causation are ordinarily questions of fact for the jury to resolve.").

been inflicted on the minor . . . shall immediately report or cause reports to be made" to law enforcement. A.R.S. § 13-3620(A). The reporting obligation applies to "[s]chool personnel," among others. A.R.S. § 13-3620(A)(4), (7). Violations of the provision amount to a misdemeanor or felony. A.R.S. § 13-3620(Q).

The parties dispute whether Section 13-3620 creates a private right of action. (*See* Docs. 109 at 7; 112 at 18-19; 113 at 5-6.) In determining whether to imply a private right of action, courts look to "the context of the statutes, the language used, the subject matter, the effects and consequences, and the spirit and purpose of the law." *Transamerica Fin. Corp. v. Superior Court*, 158 Ariz. 115, 116 (1988). Defendants argue that this Court should not imply a private right of action under the provision because it contains only a criminal penalty and imposes obligations on entities and individuals, rather than creating a benefit to Plaintiff. (Doc. 109 at 7 (citing *McCarthy v. Scottsdale Unified Sch. Dist. No. 48*, 409 F. Supp. 3d 789, 821 (D. Ariz. 2019)).) In response, Plaintiff contends that the case law cited by Defendants is inapposite, but Plaintiff makes no argument as to why the statute or its context support implying a private cause of action. (Doc. 112 at 18-19.) As such, the Court declines to find a private right of action under Section 13-3620. *See Arbaugh v. Bd. of Educ., Cnty. of Pendelton*, 591 S.E. 2d 235, 241 (W. Va. 2003) (finding that "a decided majority of states" have declined to find that "a private cause of action was implied through mandatory reporting statutes"). Defendants are therefore entitled to summary judgment on Plaintiff's failure to report claim insofar as it is based on a private right of action under Section 13-3620.

Plaintiff may, however, proceed on his theory of negligence per se as to his failure to report claim. "It is the prevailing rule, recognized in Arizona, that a breach of a statute intended as a safety regulation is not merely evidence of negligence but is negligence per se." *Brannigan v. Raybuck*, 136 Ariz. 513, 517 (1983). As Plaintiff notes, Section 13-3620(A) is acknowledged by Arizona courts as creating a statutory duty to report, and a plaintiff may raise a negligence claim under the statute. *See Doe I v. Warr*, 259 Ariz. 355, 361-62 (App. 2025), *rev. granted* (Jan. 6, 2026); *Avitia v. Crisis Preparation*

*and Recovery, Inc.*, 256 Ariz. 198, 200 (2023).

Defendants argue that the undisputed record establishes that Defendants complied with Section 13-3620 because Culver received an email from Plaintiff's mother late on September 21, 2021, and then Culver contacted Officer Stephen Dieu of the Chandler Police Department on the morning of September 22, 2021. (Doc. 109 at 7, 17.) And on October 6, 2021, when Franklin learned that another student had threatened Plaintiff at practice, he immediately reported the incident to the Chandler Police Department. (*Id.* at 7-8, 12.) Notwithstanding these reports to law enforcement, Plaintiff attests that school personnel received at least constructive notice of other incidents of harassment because the harassment took place in earshot of the football coaches. (Doc. 112-1 at 56-57.) Plaintiff contends that the District Defendants' reports to law enforcement did not account for numerous other acts. (Doc. 112 at 20.) A genuine issue of material fact therefore remains as to whether Defendants complied with their statutory reporting obligations with respect to these other incidents.

Defendants' final contention as to why summary judgment should be granted as to Plaintiff's failure to report claim is an assertion that "causation is entirely absent." (Doc. 109 at 8.) Plaintiff does not respond to this argument, but a non-movant's non-opposition does not in and of itself entitle the movant to summary judgment. *See* Fed. R. Civ. P. 56 advisory committee notes to 2010 amendment (explaining that amendments to Rule 56 prohibit the grant of summary judgment "by default even if there is a complete failure to respond to the motion"); *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013). Defendants' sole authority in support of their assertion is an out-of-circuit state appellate decision stating that a failure to report "raise[s] substantial questions of causation." (Doc. 109 at 8 (citing *C.T. v. Gammon*, 928 N.E.2d 847, 854 (Ind. Ct. App. 2010)).) That case is not binding here, and Defendants do not explain how its reasoning maps onto the record in this case. Under Arizona law, "[c]ausation is generally a question of fact for the jury . . . ." *Barrett v. Harris,* 207 Ariz. 374, 378 (App. 2004). Defendants have not identified undisputed facts establishing that, as a matter of law, reports would

have made a difference as to Plaintiff's alleged damages.

The Court will grant Defendants' request for summary judgment on Plaintiff's failure to report claim (Count X) insofar as Plaintiff asserts his claim under a private right of action. The Court will deny summary judgment as to that claim insofar as Plaintiff asserts a theory of negligence per se.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (Doc. 109) is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that summary judgment is entered in favor of Defendants as to Plaintiff's Title IX claim (Count III).

**IT IS FURTHER ORDERED** that summary judgment is entered in favor of Defendants as to Plaintiff's failure to report claim (Count X), but only to the extent that the failure to report claim is based on a private right of action.

**IT IS FINALLY ORDERED** that Defendants' Motion (Doc. 109) is denied in all other respects.

Dated this 9th day of September, 2026.

Michael T. Liburdi
Michael T. Liburdi
United States District Judge